UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-20580-GAYLES

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

JOSE MANUEL MENDEZ

      Defendant.

_____/

## **DEFENDANT'S SENTENCING MEMORANDUM**
## **AND REQUEST FOR DOWNWARD DEPARTURE**

The Defendant, JOSE MANUEL MENDEZ, (hereinafter referred to as "Mr. Mendez"), by and through undersigned counsel, pursuant to 18 U.S.C. §§ 3553 and 3661; U.S.S.G. §§ 3B1.2 and 5K2.0; and Rule 32 of the Federal Rules of Criminal Procedure, hereby acknowledges receipt of and files this response to the 1) Addendum to the Final Presentence Investigation Report received on or about February 16, 2023 (DE 58), the Government's Objections to the Presentence Investigation Report received on or about February 16, 2023 (DE 60) and the Government's Response to Defendant's Objections to the Presentence Investigation Report (DE 62).

Further, the Defendant files his Memorandum in Aid of Sentencing and moves this Honorable Court to grant a downward departure and variance from the applicable advisory Sentencing Guidelines range and presents the following relevant information for the Court to consider in determining whether to vary downward in this case.

## **Factual Background**

Mr. Mendez has been in United States custody for 15 months, having been detained on November 16, 2021.  Mr. Mendez pleaded guilty to one count of conspiracy to possess with intent

to distribute five kilograms or more of cocaine while onboard a vessel subject to the jurisdiction of the United States.  He admits guilt as it relates to being aboard a vessel transporting ten (10) bales of drugs that were revealed to be cocaine, totaling 204 kilograms.

Mr. Mendez is one of six children, his mother died when Mr. Mendez was 13 and his father passed when Mr. Mendez was thirty years of age.  Prior to her death, Mrs. Mendez worked picking cotton on plantations near Mr. Mendez's childhood home, Mr. Mendez's father worked as a sharecropper.  Mr Mendez's siblings all share the same last name and works as roadside vendors of produce, homemakers or domestic servants.

After his mother's death at age 13, Mr. Mendez was raised, sparingly, by his father.  Mr. Perez lived in poverty and hunger, under extremely low socioeconomic conditions and dependent on their own sustenance farming – meaning Mr. Mendez's own farming efforts as a child.  As a result, Mr. Mendez never attended school or experienced anything approaching formal education.  Mr. Mendez speaks only Spanish and is completely illiterate and void of any special skills, vocational or otherwise.

At age 12, Mr. Mendez began a sexual relationship with a 23 year old woman named Maria Elena Estrella, that under any other society's norms would be considered sex abuse.  At the time that a 12 year old Mr. Mendez entered into this relationship, he took on the role of fatherfigure (as a 12 year old) for his partner's two children from a prior marriage.  Those children are now 49 and 48 years old, Mr. Mendez is 53 and to this day, continues to raise and treat them as his own.  This information was confirmed by Ms. Estrella, who is now 63, currently disabled due to knee injuries and surgeries as depicted in the pictures submitted in aid of sentencing, attached hereto as a Composite Exhibit.

At age 39, Mr. Mendez began a new romantic relationship for the first time in his life since turning 13 years old.  Mr. Mendez found himself away from home for work and fell in love with a 23-year-old woman named Katie Vasquez, together began a long term relationship and in addition to helping raise her two children from a prior marriage, they welcomed a son who is now 12 years old.  Tragically, the love of Mr. Mendez's life, Katie Vazquez, died of a deep vein thrombosis in April of 2022, while Mr. Mendez was detained at FDC Miami.  Prior to her death, due in part to economic hardships, Mr. Mendez and Ms. Vazquez were separated and Mr. Mendez was pating the equivalent of $56 USD in child support.  Due to the pandemic, Mr. Mendez found himself unable to make the required parents to help in the care of his son, thus the reason for accepting risky work offers, such as the basis for the instant offense.

Mr. Mendez's history in this case begins and ends with his recruitment as crewmember on a boat to go repair or replace an outboard motor on a stranded or disabled Go-Fast-Vessel (GFV) which was interdicted by the U.S. Coast Guard in international waters.  Mr. Mendez had no involvement in the preparations, planning or execution of this or any other sea-going venture.  Mr. Mendez possesses no specials skills of any kind and his role, beyond being present on the vessel, was limited to moving fuel containers, driving the boat and trying to act like he knew what he was doing.

Mr. Mendez was unaware of the exact nature or quantity of cargo he ended up taking on from the disable boat in international waters, understanding only that it was drugs and that it would be delivered to unknown persons at the end of a journey.   Regardless of the weight of narcotics involved, based on the totality of the circumstances, Mr. Mendez should be viewed as having a minor role in this conspiracy when compared to those known and unknown to the Government.

**<u>Safety Valve Issue Resolved</u>**

It should be noted that today, March 7, 2023, Mr. Mendez, through undersigned counsel, made arrangement to supplement counsel's previously submitted factual proffer as it relates to Safety Valve consideration and eligibility. Mr. Mendez met with SA Alec Sanchez who questioned Mr. Mendez about his involvement in the instant offense. SA Sanchez advised undersigned counsel that he was satisfied that the Mr. Mendez's statement, as amended and expanded during the above meeting, was sufficient to satisfy all requirements for Safety Valve applicability and thus should resolve the concerns raised by the Government in their Response to Defendant's Objections to PSR. *See* DE 62, Sec II.B. Safety Valve Statement.

### Motion for Downward Departure
### Based on Mr. Mendez's Minor Role in the Offense

The facts and circumstances of this case provide a compelling basis for concluding that Mr. Mendez was a minor participant in the relevant conduct at issue, which is not limited to the two crew members of a single boat found in the Caribbean. Rather, this is a case which involves a large group of participants, including those known and unknown to the Government and United States Probation. In this conspiracy, it is undisputed that Mr. Mendez played a small and fungible role. Mr. Mendez was at best a bot helper or deck hand who performed no specialized or distinguishing part in the offense.

Mr. Mendez's function was to move containers of fuel from one end of the vessel to the other and back again later, on occasion steer an outboard motor and serve water and food. Mr. Mendez had no ownership in the contraband and he had no ability to execute any changes, make any plans or participate in any decision making. He is completely unaware of and had no role in making supply chain or delivery decisions or agreements. Based on the limited manual labor he

provided, Mr. Mendez requests that this Court apply a minor role reduction based on the applicability of USSG § 3B1.2(b) – as proposed by USPO based on their own assessment.

The standard for assessing the applicability of a role-based downward departure is the two-prong test promulgated in *United States v. De Varon*, 175 F.3d 930 (11th Cir. 1999) (en banc). The first prong of *De Varon* calls for an analysis of the defendant's role in the crime in comparison to the relevant conduct for which he is held accountable under the Guidelines. *Id.* at 940-44. In devising this first prong, the Eleventh Circuit reasoned:

> [G]iven the relatively broad definition of relevant conduct under § 1B1.3, some defendants may be held accountable for conduct that is much broader than their specific acts. A conspiracy conviction is the classic example of this phenomenon. In such cases, a defendant's relevant conduct may be coextensive with the entire conspiracy even though her role in that conspiracy was relatively minor. Under these circumstances, a district court may adjust the defendant's sentence for her mitigating role in this broad conspiracy. This adjustment allows a district court to *impose a sentence that more closely mirrors the defendant's actual conduct, furthering the goals of imposing comparable sentences for similar acts*.

*Id.* at 941 (emphasis added). Accordingly, in the test's second stage, the defendant's role in the relevant conduct for which he is being sentenced is balanced against the role of other participants in that relevant conduct. *Id.* at 944-45. Specific factors relevant to the balancing determination include the amount and value of the drugs attributed to the conspiracy, the defendant's role in planning the conspiracy or in distributing the drugs, the defendant's equity interest in the drugs, and the amount of money the defendant stood to earn had the operation been successful. *Id.* at 945.

The Guidelines provide guidance as to when minor role is available to those not otherwise eligible for a minimal role adjustment, but whom are still "less culpable than most other participants." U.S.S.G. § 3B1.2 cmt., n. 5. In contrast, the minimal role is applicable to those individuals "who are plainly among the least culpable of those involved in the conduct of a group... the defendant's lack of knowledge or understanding of the scope and structure of the enterprise

and of the activities of others is indicative of a role as minimal participant." U.S.S.G. § 3B1.2 cmt., n. 4. Oftentimes, recommendations to the Court regarding role adjustment are erroneously limited to the individuals before the Court at sentencing, thereby ignoring the comparative roles of other individuals known to Probation and the Government as required by the guidelines.

Should the Court agree with the positions held by USPO and undersigned counsel, specifically that Safety Valve and Minor Role applies, while Navigator Enhancement does not, then Mr. Mendez would Score a <u>Total Offense Level of 26, with a Guideline Range of 63-78.</u> (See Chart Below for proposed breakdown)

| **Count 1: 46 U.S.C. § 70506(a) and 21 U.S.C. § 960(b)(1)(B)** | | |
|---|---|---|
| 2D1.1(a)(5) & (c)(2) | Base Offense Level — 204 kilograms of Cocaine | **36** |
| 2D1.1(a)(5)(B)(ii) | Decrease in base level because the defendant receives an adjustment under § 3B1.2 (Mitigating Role) | **-3** |
| 2D1.1(b)(18) & § 5C1.2(a) | Limitation on Applicability of Statutory Minimum Sentences | **-2** |
| 3B1.2(b) | the defendant was a minor participant in any criminal activity | **-2** |
| | Total offense level for this count | **29** |
| **Acceptance of Responsibility (U.S.S.G. § 3E1.1)** | | |
| § 3E1.1(a) | the defendant clearly demonstrates acceptance of responsibility for his offense | **-2** |
| § 3E1.1(b) | Government motion | **-1** |
| **Total** | **GUIDELINE RANGE   63 - 78** | **26** |

**<u>Request for Downward Variance Pursuant to 18 U.S.C. § 3553(a) factors</u>**

In addition to any departure, Mr. Mendez respectfully requests that this Court grant his request for a downward variance from the advisory guideline range pursuant to the factors set forth in 18 U.S.C. § 3553(a). See, *United States v. Booker,* 543 U.S. 220 (2005); *Rita v. United States*, 551 U.S. 338 (2007). Specifically, when considering a downward variance from the applicable guideline range, Mr. Mendez requests that the court consider the nature and circumstances of the case and his role therein, the issues of deterrence and recidivism, the need to avoid unwarranted sentencing disparities, and the tragic conditions he has faced both at home and now in the United States during and post-Covid-19.

## NATURE AND CIRCUMSTANCES OF THE CASE

Under 18 U.S.C. 3553(a) the sentencing Court must consider "the seriousness of the offense." Mr. Mendez, as best as he can, recognizes that this case is a serious offense and one which would have caused pain and suffering to the many victims of drug abuse in the United States and elsewhere. Mr. Mendez also recognizes that without his involvement, this serious crime could have been delayed or stopped in a more efficient manner by local or international law enforcement. Mr. Mendez would however humbly point out that his role, when compared with the other participants as defined by the Guidelines, was small and involved only the completion of menial tasks on the deck of a small boat.

## DETERRENCE AND RECIDIVISM

Both the Sentencing Guidelines and 18 U.S.C. § 3553(a) require the sentencing court to consider the characteristics of the defendant that make it more or less likely that the defendant will reoffend. Mr. Mendez's acceptance of responsibility is one factor indicative of a desire to rehabilitate himself and to atone for the harm he has caused. His lengthy lawful conduct history,

humble academic end economic accomplishments, many years of law-abiding conduct and lack of a prior criminal record all suggest that there is an extremely low probability of recidivism and that he poses no future risk to our society, especially at the age of 52. When compounded with the fact that Mr. Mendez will in all likelihood never be able to return to the region from which he hails for fear of reprisal, it is far more likely than not that he will not reoffend, if for no other reason than purely logistical limitations. More importantly to Mr. Mendez, carries the extra incentive of his sense of responsibility towards his son, who is now essentially orphaned until Mr. Mendez's return, his other children and his partner will hope to relocate away from the dangers of his hometown and the stifling economic uncertainty that weighs on them each day.

<u>STATUS AS A DEPORTABLE ALIEN</u>

Prior to Mr. Mendez's involvement with this conspiracy he had no prior contacts with the criminal justice system and had never been detained. Mr. Mendez now finds himself in the United States, where he will suffer additional or enhanced punishment based on his custodial status as deportable alien. Mr. Mendez will be deported at the conclusion of his term of imprisonment and thus will see his eligibility eliminated or severely curtailed for the Bureau of Prisons' early release programs and or rehabilitative programs such as RDAP, vocational training and literacy programs. Mr. Mendez will also be subject to additional delay in his release from custody because he will be transferred to custody of the Department of Homeland Security at the conclusion of his sentence. In *United States v. Smith*, 27 F.3d 649, 307 U.S.App.D.C. 1999, the D.C. Circuit held that a downward variance may be appropriate if the defendant's status as a deportable alien is objectively likely to cause a fortuitous increase in the severity of confinement. Even if one were to ignore the lack of rehabilitative and vocational programs available to Mr. Mendez and other deportable aliens, Mr. Mendez will certainly remain in custody while awaiting proceedings that often take up to three

months to complete after the completion of criminal justice sentence, this is in and of itself an objectively increase in the severity of confinement.

<u>NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES<br>AND TO PROMOTE DISPARITIES WHERE WARRANTED</u>

There are many sentences available for comparison to this case, crew members are recruited continuously, manipulated with oftentimes false promise of life changing payments, and routinely prosecuted in this and other districts. Recent changes in our district have followed trends in other active Title 46 districts, a trend that has been consistently producing lower sentences for crew members (although this is not technically a 'traditional' crew member Titel 46 case). A non-exhaustive review of recent sentences in this district show an emerging pattern in sentencing below 60 months. A similarly non-exhaustive review of recent sentences for significantly more culpable defendants in drug trafficking organizations (DTOs) shows a surprisingly similar sentencing range. A long-held argument of Defendants in this and other districts has been that the lowest level participants in DTO's and Title 46 cases in particular, routinely receive similar or higher sentences then the very recruiters, mid-level managers and investors that lead these conspiracies.

The differences between the two co-defendants in this case is limited only by their education and vocational training, surely if either had more training than the other, than that one would likely hold a GPS or phone for a larger percentage of the time on board, neither deserves an enhancement for holding a cell phone or other GPS based advise – no more than I deserve a navigator enhancement for using Waze to arrive to the courthouse on time.

**CONCLUSION**

For the foregoing reasons, Mr. Mendez respectfully requests that the Court sustain his objections, overrule the Government's objections and respect USPO fact finding as it relates to minor role in this case when compared to all others. Mr. Mendez alternatively requests that the

Court apply a Downward Departure based on the same reasoning.  Lastly, Mr. Mendez respectfully requests that a Downward Variance be applied based on the factors detailed in this memorandum and that this Court impose the lowest prison term necessary to achieve the Court's goals in sentencing in this case and allow these men to return home as soon as possible.

Respectfully submitted,

/s/ Eduardo X. Pereira
Eduardo X. Pereira, Esq.
Arias & Pereira, PLLC
Attorney for Mr. Mendez
Florida Bar No. 0019314
2600 S. Douglas Road, Ste 1004
Miami, Florida  33134
Tel: 786-360-1341 / Fax 305-361-7271
eddie@ariasandpereira.com

# CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

/s/ Eduardo X. Pereira
Eduardo X. Pereira, Esq.
Arias & Pereira, PLLC
Attorney for Mr. Mendez
Florida Bar No. 0019314
2600 S. Douglas Road, Ste 1004
Miami, Florida 33134
Tel: 786-360-1341 / Fax 305-361-7271
eddie@ariasandpereira.com